# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **C.S.**

**No. 17-0144** (Mercer County 15-JA-41-MW)

**FILED**

**September 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.P., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's January 26, 2017, order terminating her parental rights to C.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Earl H. Hager, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, guardianship, and custodial rights based on actions that are neither abuse nor neglect as defined under West Virginia Code, and that the circuit court erred in terminating her parental, guardianship, and custodial rights on the basis of allegations and issues which were never properly made subject of the adjudication.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2015, the DHHR filed an abuse and neglect petition against petitioner. The petition alleged that the DHHR became involved with petitioner after receiving a Child Protective Services ("CPS") referral on April 16, 2015. The petition alleged that the child was born at 23 weeks gestational age and was transported to Carillion Roanoke Memorial Hospital. There, he was diagnosed with Short Bowel Syndrome requiring nutritional support, interventricular hemorrhage grade 2, and periventricular leukomalacia noncystic. The hospital

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

listed the child as medically fragile. The petition also alleged that the parents failed to comply with hospital rules requiring them to care for the baby at all times and to be at the infant's bedside from 9 a.m. to 9 p.m. daily. Neither parent learned how to properly care for the special needs of the child before his discharge from the hospital, approximately eight months later. In its petition, the DHHR further alleged that petitioner and the father were observed by hospital staff loudly arguing by the bedside of the child on multiple occasions. The petition also alleged that petitioner and the father used foul language on a regular basis when referring to the child. Hospital staff allegedly heard the father saying to the infant, "all you do is whine, shut up" and "you are such a crybaby." Additionally, on one occasion, the child was allegedly found by hospital staff having decreased respiratory breaths while the parents were on their phones and not paying attention to the child. Upon discovery of the child's condition, the nursing staff had to stimulate the child to get his respirations back to a normal rate. The DHHR also alleged that petitioner did not have stable housing for the child. Finally, the DHHR stated that the father was a registered sex offender.

In May of 2015, the circuit court held a preliminary hearing. The circuit court heard testimony from a CPS worker and petitioner. The circuit court found that, due to the child's fragile medical condition, the child would remain in foster care. Petitioner and the father were allowed two supervised visits per week at the Children's Home Society. Later in May of 2015, the circuit court held an adjudicatory hearing. Petitioner stipulated to the abuse and neglect of the child based lack of supervision, failure to meet the child's needs while he was in the hospital, and abuse due to the verbal arguments and altercations that occurred in the hospital. The circuit court granted petitioner a post-adjudicatory improvement period.

In June of 2015, petitioner underwent a psychological evaluation to determine parental fitness. In the resulting report, the psychologist found that petitioner would struggle with parenting, especially with parenting a child with special needs. The psychologist further noted that petitioner lacked the ability to manage a home and finances, and that the ability to do both was critical for meeting her child's most basic needs. In September of 2015, petitioner underwent a second psychological evaluation. The psychologist concluded that he had no confidence in petitioner's ability to parent the child without "substantial intervention and continuous monitoring to ensure the welfare of the child[ ] in her custody." In November of 2015, the circuit court held a review hearing and expressed concerns as to whether petitioner would ever be able to parent a child. Nevertheless, the circuit court granted petitioner an extension of the post-adjudicatory improvement period. In August of 2016, the DHHR presented evidence that showed that petitioner failed to provide nourishment for the child during her supervised visits, and that she relied on providers and the foster parents to do so.

The circuit court held dispositional hearings in September of 2016 and December of 2016. The CPS worker testified that during visits, petitioner had been unable to provide food or diapers for the child and relied on providers and the foster parents to provide nourishment and care for the child. The CPS worker further testified that petitioner did not understand that C.S. was a special needs child. She also testified that petitioner had not fulfilled her Temporary Assistance for Needy Families ("TANF") duties and had no income. Petitioner testified that she did not participate in parenting classes as required by her improvement plan and that she did not have a driver's license. The circuit court noted its concerns regarding petitioner's ability to

parent the child on her own, and ultimately terminated her parental, custodial, and guardianship rights in its January 26, 2017, order.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings below.

First, petitioner argues that the circuit court erred by terminating her parental, guardianship, and custodial rights based on actions that are neither abuse nor neglect as defined under West Virginia Code. We find no merit to this argument. West Virginia Code § 49-1-3 defines a neglected child as a child

"[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian . . . ."

Here, petitioner clearly neglected the child when she did not supervise him in the hospital. As discussed above, the DHHR established that petitioner failed to comply with hospital rules that required her to care for the baby and to be by the baby's bedside from 9 a.m. to 9 p.m. daily. The DHHR established petitioner never learned how to properly care for her special needs child, and that after services were provided, petitioner still did not understand that C.F. had special needs. Additionally, the record on appeal showed that petitioner was not able to provide diapers or food for the child during her supervised visits. This failure was not due primarily to financial inability, as petitioner had been receiving TANF benefits, but had lost them

---

[3]Both parent's parental, custodial, and guardianship rights to the child were terminated below. According to the guardian and the DHHR, the child is placed in a foster home with a goal of adoption therein.

due to her refusal to complete her work requirements. As such, petitioner's conduct clearly constituted neglect, and we find no error in this regard.

Next, petitioner argues that the circuit court erred by terminating her parental, guardianship, and custodial rights on the basis of allegations and issues which were never properly made subject of the adjudication. This argument is also without merit. Petitioner stipulated to allegations of abuse and neglect at the adjudicatory hearing and her parental, custodial, and guardianship rights were ultimately terminated because she failed to comply with multiple improvement periods. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Here, the evidence indicated that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect. West Virginia Code § 49-6-5(b)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . ." As discussed above, the DHHR established that petitioner did not provide food or diapers for the child at supervised visits and relied on providers and the foster parents to provide essentials for the child. This constitutes the same issue upon which petitioner was adjudicated; failure to meet the child's needs. At the dispositional hearing, petitioner testified that she did not participate in parenting classes as required by her improvement plan and that she did not have a driver's license, which would make it difficult to transport the special needs child to his doctor appointments. As such, it is clear that petitioner failed to remedy the conditions of neglect upon which she was adjudicated. For these reasons, we find no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 26, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: September 25, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4